UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARIA C. CHILDRESS, a/k/a Tina Childress, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:16 CV 931 CDP |
| FOX ASSOCIATES, LLC, d/b/a Fabulous Fox Theatre, | ) ) ) ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Title III of the Americans with Disabilities Act (ADA) prohibits owners and operators of places of public accommodation such as the Fabulous Fox Theatre from discriminating on the basis of disability in the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(a). Such places are prohibited from affording people with disabilities "the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals," *id.* § 12182(b)(1)(A)(ii); and are required to provide "auxiliary aids and services" as may be necessary to "ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals," *id.* § 12182(b)(2)(A)(iii). A public accommodation must provide

appropriate auxiliary aids and services to ensure "effective communication" with individuals with disabilities. 28 C.F.R. § 36.303(c)(1).

Plaintiffs Maria C. "Tina" Childress and Mary Stodden are deaf individuals who each have cochlear implants that allow them to function adequately under ideal circumstances. Even with this assisted hearing, however, the nature of their hearing impairment prevents them from understanding the dialogue and lyrics of live theater. Neither plaintiff knows or uses American Sign Language (ASL). And, because of the nature of their hearing loss, volume-enhancing devices do not aid in their ability to hear. Childress and Stodden are members of the Association of Late Deafened Adults (ALDA) and the Greater St. Louis Chapter of the Hearing Loss Association of America (HLAA-StL), non-profit organizations who support and advocate for persons with hearing loss. Each organization has members who have attended performances at the Fox. ALDA and HLAA-StL are also named as plaintiffs and proceed in this action on behalf of its members. *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 342-43 (1977) (standing of association to bring suit on behalf of its members).

Plaintiffs allege that, because the full and equal enjoyment of the Fox Theatre includes the ability to understand the dialogue and lyrics of live theater during Broadway-type performances, effective communication for those who cannot hear what is being said or sung requires hands-free, line-of-sight captioning.

Plaintiffs further argue that, by providing captioning for only certain performances and not all scheduled performances, the Fox Theatre provides services, privileges, advantages, and accommodations to deaf Fox patrons that are not equal to those afforded hearing patrons, and thus that they are treated differently from hearing patrons, in violation of 42 U.S.C. §§ 12182(b)(1)(A)(ii) and 12182(b)(2)(A)(iii).

In their complaint, plaintiffs seek injunctive relief, and specifically that Fox Theatre be ordered to: 1) provide open or closed captioning at all performances of theatrical productions; 2) publicize the availability of captioning and provide means to request captioning; 3) enable persons to purchase tickets to captioned performances by non-telephonic means, including by electronic mail; and 4) provide hands-free, line-of-sight captioning devices. In their motion for summary judgment, plaintiffs clarify that they ask for Fox Theatre to provide captioning only when requested. They make an additional request in their motion, however, that Fox Theatre be ordered to establish a procedure for it to consider and respond to customer feedback about captioning.

Both sides have moved for summary judgment.

**Legal Standard**

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). I must view the facts in the light most favorable to the nonmoving party, "but only 'if there is a genuine dispute as to those facts.'" *RSA 1 Ltd. P'ship v. Paramount Software Assocs., Inc.*, 793 F.3d 903, 906 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042).

The parties agree that the relevant facts are not in dispute, but each side argues that the law as applied to those facts requires that judgment be entered in their respective favor. For the following reasons, plaintiffs are entitled to judgment as a matter of law on their claims of discrimination. They are not legally entitled, however, to all of the relief they seek. I will therefore grant their motion for summary judgment and enter the relief to which they are entitled under the law. Defendant's motion for summary judgment will be denied.

**Evidence Before the Court on the Motions**

The Fox Theatre is a 4500-seat indoor theater and stage venue. It provides a wide range of accommodations for guests with disabilities and provides information regarding these accommodations on its public website.

In April 2016, plaintiff Childress contacted Fox Theatre to request captioning for *Rent*, a Broadway production scheduled to perform at the Fox in May 2017. Fox responded that it had no plan to provide captioning. Childress's counsel thereafter sent a letter to Fox regarding the ADA's requirement for

captioning, but the letter went unanswered.  Childress then filed this lawsuit in June 2016.

After the lawsuit was filed, and after negotiations and discussions among the parties, Fox agreed to provide prescheduled captioning for one performance of some of its Broadway productions, provided that captioning was requested two weeks in advance of that prescheduled performance.[1]  Captioning for these Broadway shows is typically prescheduled for a single Saturday matinee performance of each show.  Fox publicizes this information on its website.  For non-Broadway special events, Fox does not indicate whether captioning is available.

Closed captioning was provided to Childress on a handheld device during the May 20, 2017, performance of *Rent*.  Because it was a handheld device, Childress had to either hold it up to provide line-of-sight viewing, or set it on her lap, which required her to look away from the performance to read the captioning.  Fox also provided closed captioning on five other occasions – for *Mama Mia* on July 29, 2017; *The Bodyguard* on October 14, 2017; *On Your Feet* on November 18, 2017; *The King and I* on December 9, 2017; and *School of Rock* on January 21, 2018.  Fox prescheduled the closed-captioned performance of *School of Rock* for January 27, 2018, but because Childress was unable to attend that performance,

---

[1] The captioning service provided by Fox requires a live, in-person court reporter to be in attendance and to transcribe the words, lyrics, and other sounds in real-time during the show.

Fox provided closed captioning on that earlier date, January 21, when Childress could attend. Fox continued in its plan to provide closed captioning at the January 27 performance.

Fox has six personal devices/tablets available for use by guests to view the captions during each captioned show. Fox provides device holders for these tablets but restricts their use to certain seats and rows that are wheelchair compatible. Fox does not affix device holders to other seats or in other rows because the St. Louis City Fire Marshal considers this condition to be a fire hazard. A patron may use a handheld device from any seat in the theater.

When Fox provided closed captioning on January 21 at Childress's request – a date that was not prescheduled for closed captioning – Fox advised Childress that it was making an "exception to [its] policy" "on this one occasion" and that future requests for captioning for non-prescheduled performances would be evaluated on a case-by-case basis and not always granted. For two season ticketholders who requested captioning service, Fox exchanged their tickets so they could attend the Saturday matinee performances that were prescheduled for captioning.

Plaintiff Stodden did not attend any performance at the Fox in 2016 or 2017, nor did she request captioning at any performance at the Fox in 2016 or 2017. She was unable to attend the prescheduled captioned performance of *Rent*.

## Discussion

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation[.]" 42 U.S.C. § 12182(a). Theaters, concert halls, and other places of entertainment are "public accommodations." 42 U.S.C. § 12181(7)(C).

Discrimination under Title III of the ADA occurs when a public accommodation provides disabled individuals with an opportunity to participate in or benefit from its goods, services, facilities, privileges, advantages, or accommodations, but that opportunity is not equal to that afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii). The ADA focuses on the equal opportunity to participate in obtaining and using services, not merely on the quality of the service or its outcome. *Id.*; *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 834 (11th Cir. 2017). *See also Argenyi v. Creighton Univ.*, 703 F.3d 441, 449 (8th Cir. 2013) (aids and services need not produce identical result for disabled and non-disabled persons, but they nevertheless must afford disabled persons equal opportunity to gain the same benefit).

Because one purpose of the ADA is to remedy the discriminatory effect of communication barriers faced by individuals with communication disabilities, such

as hearing impairments, *see* 42 U.S.C. § 12101(a)(5), discrimination occurs when a public accommodation fails "to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services," 42 U.S.C. § 12182(b)(2)(A)(iii), unless taking such steps would "fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." *Id.*

"Auxiliary aids and services" are the means or methods by which public accommodations can effectively communicate with people who have communication disabilities. *See* 42 U.S.C. § 12103(1). These aids and services include, among other things, "open and closed captioning, including real-time captioning; . . . or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing." 28 C.F.R. § 36.303(b). *See also* 42 U.S.C. § 12103(1). Regulations promulgated by the Department of Justice require public accommodations to "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). And, as described above, discrimination under the ADA occurs when a public accommodation denies services, segregates, or otherwise treats a disabled individual differently than other individuals because of the absence of auxiliary aids and services. 42 U.S.C. § 12182(b)(2)(A)(iii).

The plaintiffs here bring their claims of discrimination under the two specific provisions of the ADA set out above: 1) 42 U.S.C. § 12181(b)(1)(A)(ii), in that the opportunities to participate provided to them by Fox are unequal to those provided by Fox to its non-disabled, hearing patrons; and 2) 42 U.S.C. § 12181(b)(2)(A)(iii), in that the absence of auxiliary aids and services at the Fox results in unequal treatment. To prevail on these claims, plaintiffs must show (1) discrimination on the basis of a disability (2) in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of the Fox Theatre (3) by Fox's owner, lessor, or operator. *Anderson v. Franklin Inst.,* 185 F. Supp. 3d 628, 642 (E.D. Pa. 2016). For the following reasons, plaintiffs have shown discrimination under these provisions of the ADA.

The parties do not dispute that plaintiffs are disabled within the meaning of the ADA. Nor do they dispute that the Fox Theatre is a public accommodation. Fox argues that plaintiffs cannot show discrimination in their enjoyment of its services or facilities, however, because Fox's modification to its policies and procedures – providing closed captioning for hearing-impaired individuals at a prescheduled performance of each of its Broadway-series productions – is reasonable. Fox argues that because it has provided a reasonable accommodation, nothing more is required for it to comply with the ADA. Fox's argument is misplaced.

Fox is correct that an entity can be held liable for ADA discrimination for failing to reasonably modify its policies and practices to accommodate individuals with disabilities. *See* 42 U.S.C. § 12182(b)(2)(A)(ii). But plaintiffs do not bring a claim under this provision of the ADA and do not base their claims on an alleged failure to change policies or procedures. Instead, plaintiffs claim that the opportunity afforded by Fox to deaf individuals to participate in Fox's services is not equal to that afforded to its hearing patrons, which is in violation of 42 U.S.C. § 12182(b)(1)(A)(ii); and further, that Fox's provision of closed captioning at only preselected performances of limited productions – and thus, the absence of this auxiliary aid and service at other performances – causes deaf individuals to be treated differently than other individuals, which is in violation of 42 U.S.C. § 12182(b)(2)(A)(iii). I agree.

A non-disabled, hearing person has the benefit of an expansive selection of performances to attend at the Fox and is not limited to only one performance on a date preselected by the venue. Because a disabled deaf person is not afforded this benefit, it would be error to conclude that the mere successful provision of captioning for only one prescheduled performance is enough, as a matter of law, to preclude liability under the ADA. *Cf. Silva*, 856 F.3d at 835. While closed captioning provides an opportunity to deaf patrons to participate in Fox's services, the limited opportunity provided by Fox is not equal to that afforded to its non-

disabled, hearing patrons. This denial of an equal opportunity to participate violates 42 U.S.C. § 12182(b)(1)(A)(ii). Further, to provide captioning for only certain types of performances, *i.e.*, the Broadway series, and not others likewise deprives a disabled deaf person of a benefit that is accorded to hearing persons. Fox's failure to make this auxiliary aid and service available for all productions results in deaf persons being excluded, denied services, or otherwise treated differently than other individuals merely because of the absence of this aid. This failure violates 42 U.S.C. § 12182(b)(2)(A)(iii). Fox presents no argument or evidence that "undue burden" or "fundamental alteration" excuses its failure.

Fox argues that the regulations permit it to be the decision maker as to what constitutes effective communication and that no legal authority requires it to provide captioning service at every performance. Under 28 C.F.R. § 36.303(c)(1)(ii), a public accommodation has ultimate decision making authority over "what type of auxiliary aid" is needed to ensure effective communication, as long as effective communication is accomplished. To be effective, "the auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *Id.* There is no dispute that the captioning service provided at the Fox is an appropriate *type* of auxiliary aid under the regulation. However, given the limited basis on which Fox provides it to its deaf patrons, that is, only at

Broadway-series productions and then only on one preselected date per production, it cannot be said that this provision of an otherwise appropriate auxiliary aid protects the independence of the individual with a disability.  I cannot say, therefore, that Fox's limited provision of captioning ensures effective communication.  It certainly does not provide its deaf patrons the opportunity to participate in Fox's services on an equal basis as that afforded to its nondisabled, hearing patrons, 42 U.S.C. § 12182(b)(1)(A)(ii); and it results in the exclusion of disabled individuals from several Fox productions, and segregation to only certain performances that are preselected by Fox.  This different treatment runs afoul of 42 U.S.C. § 12182(b)(2)(A)(iii).

Accordingly, injunctive relief is warranted on the claims raised in this case to bring the Fox Theatre in compliance with the ADA and to protect the rights of its deaf patrons, including plaintiffs.

**Injunctive Relief**

Plaintiffs primarily ask that Fox make hands-free, line-of-sight captioning available to its deaf patrons for all performances at which such captioning is requested.  Fox currently requires two weeks' advance notice for captioning service, and, other than objecting to Fox limiting this requested service to only one performance per Broadway production, plaintiffs do not complain that requiring two weeks' advance notice is unreasonable.

Fox also currently provides handheld tablets for captioning, which can be used from any seat in the theater. While Fox has device holders that would provide the hands-free, line-of-sight remedy requested by plaintiffs, it restricts their use to only wheelchair-compatible seats and rows because of fire safety concerns. Plaintiffs concede that these concerns are valid, but argue that restricting the use of device holders or support stands to only wheelchair-compatible seats may lead a wheelchair-bound patron to "oust" a deaf patron from that space, possibly leaving that deaf patron with no choice but to the leave the theater. Plaintiffs are incorrect in their assumption.

"A public accommodation that sells tickets for a single event or a series of events shall modify its policies, practices, or procedures to ensure that individuals with disabilities have an equal opportunity to purchase tickets for accessible seating[.]" 28 C.F. R. § 36.302(f)(1)(ii). While "accessible seating" is defined as "wheelchair spaces and companion seats," 28 C.F.R. § 36.302(f)(1)(i), and are designed for use by a wheelchair user, 28 C.F.R. Ch. 1, Pt. 36, App. A, the seating may be used by non-wheelchair users "if those persons are persons with a disability who need to use accessible seating . . . because their disability requires the use of the features that accessible seating provides[.]" *Id.*, § 36.302(f).

Accessible seating at the Fox provides the feature of holders or support stands for hands-free, line-of-sight captioning for use by its deaf patrons. This

feature is not available in non-accessible seating.  Under the regulations, therefore, Fox must provide its deaf patrons the opportunity to purchase tickets for accessible seating so that they may use this feature.  A person who has a ticket for accessible seating (even a non-disabled person) is not required to be removed if a wheelchair user with a ticket for a non-accessible seat appears and requests accessible seating. *See* 28 C.F.R. Ch. 1, Pt. 36, App. A, § 36.302(f).  Because deaf patrons are persons who have a disability that requires the use of the accessible feature that is provided in Fox's accessible seating, they are entitled to purchase tickets for that seating without threat of removal.

Upon consideration of the requested relief and the circumstances of this case, I will order that Fox Theatre:  1) provide open or closed captioning at all performances of theatrical productions where captioning is requested at least two weeks in advance; 2) publicize the availability of captioning and provide means to request captioning; 3) enable persons to purchase tickets to captioned performances by non-telephonic means, including by electronic mail; and 4) provide hands-free, line-of-sight captioning devices in areas designated as accessible seating, and handheld captioning devices in all other seating.  I conclude, as a matter of law, that the ADA does not require public accommodations to establish procedures for them to consider and respond to customer feedback about captioning, so I will not order this requested relief.

Because this is an issue of law based on the undisputed facts, no trial is necessary on this issue.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' Motion for Summary Judgment [34] is granted.

**IT IS FURTHER ORDERED** that defendant's Motion for Summary Judgment [52] is denied.

**IT IS FURTHER ORDERED** that within thirty (30) days of the date of this Order, defendant shall:

- Provide open or closed captioning at all performances of theatrical productions at the Fabulous Fox Theatre where captioning is requested at least two weeks in advance.

- Publicize the availability of captioning at the Fabulous Fox Theatre and provide means to request captioning.

- Provide hands-free, line-of-sight captioning devices at the Fabulous Fox Theatre for use from accessible seating upon two weeks' advance request.

- Provide handheld captioning devices at the Fabulous Fox Theatre for use from non-accessible seating upon two weeks' advance request.

- For single events or series of events, offer for sale to deaf patrons tickets for accessible seating at the Fabulous Fox Theatre under the same terms and conditions as other tickets sold for the same event or series of events.

- Enable persons to purchase tickets to captioned performances at the Fabulous Fox Theatre by non-telephonic means, including by electronic mail.

An appropriate Judgment is entered herewith.  Any motion for attorney's fees shall be filed in accordance with Local Rule 8.02.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 18th day of April, 2018.